---

## Circuit Court Case No. 15-55728

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**Kathleen D. Gates**
PLAINTIFF – APPELLANT,

v.

**MCT Group, Inc.;** LAW OFFICES OF PETER W. SINGER
DEFENDANTS – APPELLEES.

---

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DISTRICT COURT CASE NO.:
3:13-CV-02611-MMA-DHB

---

APPELLANT'S REPLY BRIEF

---

*Attorneys for Appellant-Plaintiff:*

Robert L. Hyde, Esq. (CA State Bar # 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (CA State Bar # 225557)
josh@westcoastlitigation.com
Jessica R. K. Dorman, Esq. (CA State Bar #: 279919)
jessica@westcoastlitigation.com

**HYDE & SWIGART**
2221 Camino Del Rio South, Ste 101
San Diego, CA  92108-3609
Telephone Number:  (619) 233-7770

---

# Table Of Contents

I.    Introduction ...................................................................................1

II.   Argument .....................................................................................2

    A.   Singer's argument that it was only levying "legally available funds" is a mischaracterization of the facts as Singer did not limit the levy to "non-exempt funds," as it should have.................................................................2

    B.   Singer's arguments concerning its "intent" are irrelevant.................................4

    C.   Singer's choice to abstain from conducting a debtor's exam also led to the violation of the FDCPA and California's Rosenthal Act ...................................5

    D.   Singer's argument that because Singer never "spoke" with Gates it cannot be held liable is also misleading ...............................................................6

    E.   Contrary to Singer's claim, Singer can be held responsible for the decisions of its client .............................................................................8

    F.   Singer's threat to take the Social Security benefits of Gates, as well as the actual taking of those benefits, violated the FDCPA and California's Rosenthal Act ........................................................................10

    G.   The funds levied here were Social Security benefits........................................11

        1.   Singer conceded that the funds levied were Social Security benefits .........11

        2.   Even without this concession, Gates established, through tracing, that the funds were exempted Social Security benefits ...........................................12

    H.   Singer's argument concerning state law are inapposite ....................................14

    I.   There were alternatives available to Singer that would have avoided this violation, but Singer chose not to implement those alternatives.....................17

III.  Conclusion..................................................................................21

IV.  Certificate of Compliance Pursuant to Fed. R. App. 32(a)(7)(C) and Circuit Rule 32-1 ........................................................................................(a)

V.   Certificate of Service .........................................................................(b)

## Table Of Authorities

### Cases

*Barrows v. Petrie & Stocking, S.C.*,
   2008 U.S. Dist. LEXIS 61892 (W.D. Wis. Aug. 13, 2008) ..................................7

*Bennett v. Arkansas*,
   485 U.S. 395 (U.S. 1988) .....................................................................15, 16, 17

*Bray v. Cadle Co.*,
   2010 U.S. Dist. LEXIS 109470 (S.D. Tex. Oct. 12, 2010) ..............................13

*Brinkman v. Rahm*,
   878 F.2d 263 (9th Cir.1989)..............................................................................17

*Clark v. Capital Credit & Collection Servs., Inc.*,
   460 F.3d 1162 (9th Cir. 2006)...................................................................4, 9, 21

*Crawford v. Gould*,
   56 F.3d 1162 (9th Cir. Cal. 1995) ..............................................................16, 17

*Dean v. Fred's Towing*,
   245 Mont. 366, 801 P.2d 579 (Mont. 1990) ....................................................13

*Evory v. RJM Acquisitions Funding L.L.C.*,
   505 F.3d 769 (7th Cir. 2007) .............................................................................7

*Fetterusso v. State of New York*,
   898 F.2d 322 (2d Cir. 1990)........................................................................16, 17

*FTC v. Colgate-Palmolive Co.*,
   380 U.S. 374, 85 S. Ct. 1035, 13 L. Ed. 2d 904 (1965) ...................................21

*Gburek v. Litton Loan Servicing LP*,
   614 F.3d 380 (7th Cir. 2010) ..............................................................................8

*Gonzales v. Arrow Fin. Servs., LLC*,
   660 F.3d 1055 (9th Cir. Cal. 2011) ................................................................5, 7

*Hooser v. Superior Court*,
   84 Cal. App. 4th 997 (Cal. App. 4th Dist. 2000) ...............................................5

## Table Of Authorities

### (Cases continued)

*Jogani v. Jogani,*

141 Cal. App. 4th 158 (Cal. App. 2d Dist. 2006) ...................................6

*McCollough v. Johnson, Rodenburg & Lauinger, LLC,*

637 F.3d 939 (9th Cir. Mont. 2011) .......................................................4

*NCNB Financial Services, Inc., v. Shumate,*

829 F. Supp. 178 (W.D. Va. 1993) ........................................................13

*Philpott v. Essex County Welfare Bd.,*

409 U.S. 413, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973) ........................13

*Porter v. Aetna Casualty & Surety Co.,*

370 U.S. 159 (U.S. 1962) .....................................................................13

*Reichert v. National Credit Systems, Inc.,*

531 F.3d 1002 (9th Cir. 2008) ......................................................4, 9, 19

*S & S Diversified Servs., L.L.C. v. Taylor,*

897 F. Supp. 549 (D. Wyo. 1995) .........................................................13

*Swanson v. Southern Or. Credit Serv.,*

869 F.2d 1222 (9th Cir. Or. 1988) ...................................................10, 21

*Taylor v. Sentry Life Ins. Co.,*

729 F.2d 652 (9th Cir. 1984) .................................................................7

*United States v. Novak,*

476 F.3d 1041 (9th Cir. Cal. 2007) .......................................................15

### Statutes

15 U.S.C. § 1692 *et seq.* .....................................................................1, 4

15 U.S.C. § 1692(a)(2) ............................................................................1

15 U.S.C. § 1692(e)(5) .......................................................1, 7, 10, 15, 21

## Table Of Authorities

### (Statutes continued)

15 U.S.C. § 1692k(c) ........................................................................18, 19

15 U.S.C. § 1692n ...............................................................................14

42 U.S.C. § 407 .........................................................................11, 16, 17

42 U.S.C. § 407(a) .....................................................................15, 16, 17

42 U.S.C. § 407(b) ..............................................................................16

Cal. Civ. Code § 1788-1788.32...........................................................1, 4

Cal. Civ. Code § 1788.17.........................................................1, 10, 15, 21

### Rules

Cal. Code Civ. Proc. § 704.080(e)(1) ....................................................12

Cal. Code Civ. Proc. § 704.080(e)(4) ....................................................12

Cal. Code Civ. Proc. § 704.080(e)(3) ....................................................12

Cal. Code Civ. Proc. § 708.110..........................................................5, 19

Cal. Code Civ. Proc. § 708.120............................................................20

### Federal Rules of Appellate Procedure

Fed. R. App. P. 32(a)(5)......................................................................(a)

Fed. R. App. P. 32(a)(6)......................................................................(a)

Fed. R. App. P. 32(a)(7)(B) .................................................................(a)

Fed. R. App. P. 32(a)(7)(B)(iii) ...........................................................(a)

Fed. R. App. P. 32(a)(7)(C) .................................................................(a)

**Table Of Authorities**

**(continued)**

**Circuit Rules**

Ninth Circuit Rule 32-1 ................................................................................(a)

## I. Introduction

The Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("Rosenthal Act") provide that a debt collector may not threaten action against debtors when the debt collector is not legally entitled to take the action threatened, or when the debt collector does not intend to take the action threatened. Such threats can take place directly or indirectly, through any medium. 15 U.S.C. § 1692a(2), 15 U.S.C. § 1692e(5) and Cal. Civ. Code § 1788.17.

Here, Appellee Law Offices of Peter W. Singer ("Singer"), a debt collection law firm regulated by the FDCPA and California's Rosenthal Act, levied the Social Security benefits of Appellant Gates by instructing the San Diego Sheriffs to take *all funds* from *all bank accounts* related to Gates, without any effort to determine the source of those funds prior to the levy. Instead, Singer threatened to levy Gates' Social Security benefits, and then followed through with that threat by actually levying the funds, taking what little money Ms. Gates had squirreled away in her savings account from her monthly social Social Security income. Singer argues that such a levy was legal because the Sheriff eventually returned the levied funds once Gates complained that this levy was illegal, although Singer neglects to consider that its actions caused Ms. Gates to incur bank fees associated with the levy, which were never returned. Gates argues that both the threat and the actual levying of those funds violated state and federal law.

Such a 'shoot-first, and ask-questions later' policy exposes debtors to sizable bank fees (as here, where Gates had to pay $125.00 which was never returned, [*Record 94*]), as well as the loss of the exempt funds. It exposes debtors to having their exempt funds permanently and illegally deprived unless the debtor retains legal counsel, a rarity as these Social Security recipients often do not have the financial resources needed to hire counsel and reverse the damage. The FDCPA and the Rosenthal Act provide that illegal actions and threats to take illegal actions, such as levying protected funds, are prohibited. Consequently, a debt collector is under a statutory obligation to ensure that when levying bank accounts Social Security benefits are not levied, or be strictly liable for their actions.

## II.    Argument

### A.    Singer's argument that it was only levying "legally available funds" is a mischaracterization of the facts as Singer did not limit the levy to "non-exempt funds," as it should have.

Singer argues that it never threatened, nor actually engaged in, the levying of Gate's Social Security benefits because it instructed the Sheriff to levy only funds that were "legally available." (*See* Answering Brief at p. 4, ¶ 2, stating, "In 2013, instructions were sent to the San Diego County Sheriff to levy any funds legally available from Ms. Gates' bank account(s) at Wells Fargo Bank.")   In reality however, the document Singer sent to the Sheriff [*Record 522*] makes it clear that this is *not* what Singer was demanding.   In this document [*Record 522*] Singer

instructed the Sheriff to "LEVY ON ALL SUMS ON DEPOSIT," instructing the Sheriff to take everything, exempt or otherwise, which is exactly what took place here - Singer drained Gates' savings account of every penny, all of which were the Social Security benefits of Gates. *See also*, Answering Brief at p. 17, § VII, with Singer admitting *it* was the one responsible for levying the funds here ("Simply put, Singer started the levy process.") Singer could have simply stated in the levy instructions to levy "only non-exempt funds," but Singer chose not to do so.

Singer also asserts in its Answering Brief that "Singer's instructions to the Sheriff *resulted* in funds from only one of Ms. Gates' bank accounts being sent to the sheriff: Ms. Gates' savings account." (See Answering Brief at p. 4, ¶ 2.) Again, this is misleading, as it gives the impression that Singer instructed the Sheriff to levy only limited funds as the brief uses the phrase "resulted in" instead of "instructed." While it is true that the levy "resulted in" only one account being levied, this was in spite of, not in compliance with, the instructions from Singer. Singer actually *instructed* the Sheriff to levy *all accounts* ("LEVY ON ALL SUMS ON DEPOSIT" "DO NOT RESTRICT TO ACCOUNTS INDENTIFIED [SIC] BELOW") but this *resulted in* only one account being levied because the bank refused to cooperate with Singer. Singer actually instructed the Sheriff to levy *all funds* in *all accounts* and not merely the savings account. Finally, Singer instructed the Sheriff to continue levying these accounts "FOR FULL 6 MONTHS TERM." [*Record, 522.*] If Singer had narrowly tailored its instructions to request only non-exempt funds, it

would have followed the law and there would have been no illegal threat to levy, or the actual levying of, protected Social Security funds.

**B.    Singer's arguments concerning its "intent" are irrelevant.**

In its Answering Brief, Singer argues that it never intended to take the Social Security benefits of Gates, so Singer should not be held liable. (*See* Answering Brief at p. 21, § VII, with Singer arguing that it levied Gates' Social Security benefits "with no information that the funds were exempt" so the levying of Social Security benefits should not be viewed as being unfair or unconscionable.) However, the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. ("FDCPA"), and Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("Rosenthal Act"), are strict liability statutes where *intent* is of no consequence, and absent a showing of bona fide error by Singer, which Singer and MCT both expressly waived, there is no defense.  *Reichert v. National Credit Systems, Inc.* 531 F.3d 1002, 1004 (9th Cir, 2008)  ("After the district court ruling, and after this appeal was briefed, our court decided [*Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir. 2006)], which made clear that the FDCPA is a strict liability statute in that a plaintiff need not prove an error was intentional.") *See also*, *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. Mont. 2011), citing *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1005 (9th Cir. Ariz. 2008).  "The FDCPA does not ordinarily require proof of

intentional violation, and is a strict liability statute." *See also*, *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. Cal. 2011) (same).

Consequently, this persistent argument by Singer that its actions were not intentional, due to the ignorance of Singer as to the source of Gate's income, are irrelevant and immaterial here.

**C.    Singer's choice to abstain from conducting a debtor's exam also led to the violation of the FDCPA and California's Rosenthal Act.**

The State of California provides debt collectors with certain procedural safeguards designed to, among other things, avoid the inadvertent levying of exempt funds like Social Security benefits and veteran's benefits. Notably, California's levying form allows for a judgment creditor to provide detailed instructions on which funds are to be levied, and which funds are not to be levied.

Another valuable safeguard available to debt collectors is a debtor's exam pursuant to Cal. Code Civil Proc. § 708.110. *Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1002 (Cal. App. 4th Dist. 2000) ("A judgment debtor examination is intended to allow the judgment creditor a wide scope of inquiry concerning property and business affairs of the judgment debtor … The purpose of the examination is "to leave no stone unturned in the search for assets which might be used to satisfy the judgment." [Internal citations omitted.]) During such an exam, a debtor may make a claim of exemption and the court will normally resolve the

issue immediately. *Jogani v. Jogani*, 141 Cal. App. 4th 158, 173 (Cal. App. 2d Dist. 2006).

Singer chooses not to implement these safeguards when collecting debts, arguing that at $60.00, this procedure is too expensive. (*See* Answering Brief at p. 15-16, explaining that a "cost-benefit analysis" was used to determine that there was "no monetary benefit" to implementing such a debtors exam.) This is an ironic admission considering that here Singer's actions caused Gates to incur bank fees of over twice the $60.00 Singer and MCT saved. *See* [*Record 94*]. However, in the world of debt collection, the abuse endured by consumers is inconsequential to debt collectors, especially when a debt collector can simply levy the consumer's funds and return a portion of the money taken after the damage is done.

Consequently, when Singer argues it had "no information that the funds were exempt," if this is true it is only true because Singer deliberately chose be deliberately ignorant of the facts, and any lack of intent here was due to Singer's refusal to follow this simple, low-cost, procedure provided by California law, or to limit its instructions just in-case there were exempt funds.

**D.** **Singer's argument that because Singer never "spoke" with Gates it cannot be held liable is also misleading.**

Singer argues that "[a]fter it was determined that Ms. Gates had never spoken to Mr. Singer, after Ms. Gates's deposition, Ms. Gates failed to dismiss any of her claims against Mr. Singer." (*See* Answering Brief at p. 5, fn 3.)

This argument concerning whether Mr. Singer ever "spoke" with Ms. Gates was never raised, nor considered, in the district court, and the appellee raises this argument here for the first time. A party may not raise new issues on appeal. *Taylor v. Sentry Life Ins. Co.*, 729 F.2d 652, 655 (9th Cir. 1984) (*per curiam*).

However, even if this argument had been raised in the district court there is no merit to it as there is no requirement under the FDCPA for a communication to be "spoken." Under section e(5), a "false, deceptive, or misleading representation or means" establishes a violation. Consequently, a "means" can be a violation. The "means" used here, instructing the San Diego Sheriff to levy all funds in the bank accounts of Gates, including Social Security benefits, now and for six months into the future is a threat to take action that cannot legally be taken. Further, when a consumer is relying on a "representation," that representation can be "written," not just "spoken," and indeed, here the communications were written. *Gonzales v. Arrow Fin. Servs.*, LLC, 660 F.3d 1055, 1063-1064 (9th Cir. Cal. 2011).

Further still, "post-judgment communications are not exempt from the Act's coverage simply because the debt collector's communication is directed to a third party and not to the consumer himself." *Barrows v. Petrie & Stocking, S.C.*, 2008 U.S. Dist. LEXIS 61892, *21-22 (W.D. Wis. Aug. 13, 2008), citing *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773 (7th Cir. 2007). Under the Act, a communication "is the conveying of information regarding a debt *directly or indirectly* to any person through any medium." *Id.* (Emphasis in original)" See

also, *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir. 2010) (letter sent by loan servicer to mortgagor, letter from firm that partnered with loan servicer to mortgagor, and letter from loan servicer to the same firm each constitutes "a communication in connection with the collection of [a] debt").

Finally, the idea that "Ms. Gates failed to dismiss any of her claims against Mr. Singer" is a rather odd one, as Gates never filed any claims against "Mr. Singer." It has never been established (or even questioned) whether "Mr. Singer" (the person) did or did not speak *personally* with Gates. Throughout this case "Singer" has always referred to the "Law Offices of Peter W. Singer," which includes everyone at that law firm, and not merely "Mr. Singer" himself. "Mr. Singer" (the person) is not, and never has been, a party to this action, and arguing about whether Mr. Singer spoke with someone, or that claims against him should be dismissed is inapposite. Finally, most representations under the FDCPA and California's Rosenthal Act are conducted in writing (usually letters), not verbally, and indeed here, Singer (the law firm) represented the defendant, and the written communications at issue here came from the "Law Offices of Peter W. Singer."

## E. Contrary to Singer's claim, Singer can be held responsible for the decisions of its client.

Singer argues that it was not Singer that chose to levy the Social Security benefits of Gates, but its client, MCT, arguing in effect that Singer just does as it is told by its client, and consequently Singer cannot be held liable for the levy. For

this proposition, Singer cites to *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir. 2006). (*See* Answering Brief at p. 16, § VI-B.)

However, as the Ninth Circuit subsequently explained in *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002 (9th Cir. Ariz. 2008), clarifying *Clark*, any reliance by Singer as to representations by MCT can only be relied upon as it pertains to the bona fide error defense, which Singer and MCT both waived early on in this case. [*Record 223-224, item #15*] (Singer declaring that it was not asserting the bona fide error defense) and; [*Record 228*, *item #15*] (MCT declaring that it also was not asserting the bona fide error defense.) The Ninth Circuit has already held that client representations to debt collectors do not affect the outcome of liability.

> When we spoke in *Clark* of the nonliability of a debt collector who "reasonably relies" on the reported debt, we were referring to a reliance *on the basis of procedures maintained to avoid mistakes*. A debt collector is not entitled under the FDCPA to sit back and wait until a creditor makes a mistake and then institute procedures to prevent a recurrence. *To qualify for the bona fide error defense under the FDCPA, the debt collector has an affirmative obligation to maintain procedures designed to avoid discoverable errors*, including, but not limited to, errors in calculation and itemization. The latter would include errors in claiming collection expenses of the creditor that could not legitimately be part of the debt owed by the debtor.

*Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1007 (9th Cir. Ariz. 2008) (Italics added for emphasis.) Under the controlling law, by this court, Singer cannot simply bury its head in the sand, and fail to implement procedures to prevent the illegal actions that occurred here from occurring.

**F.    Singer's threat to take the Social Security benefits of Gates, as well as the actual taking of those benefits, violated the FDCPA and California's Rosenthal Act.**

Under the FDCPA, and California's Rosenthal Act as the Rosenthal Act incorporates the FDCPA pursuant to Cal. Civ. Code § 1788.17, when a debt collector threatens to take action that the debt collector is not legally entitled to take, such a threat violates the FDCPA and Rosenthal Act pursuant to 15 U.S.C. § 1692e(5). *Swanson v. Southern Or. Credit Serv.*, 869 F.2d 1222, 1227 (9th Cir. Or. 1988). This threat must be viewed from the eyes of the least sophisticated debtor. *Id*. ("We conclude, therefore, that the least sophisticated debtor standard does apply to an allegation that a debt collector made a "threat to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5)). *See also*, the Ninth Circuit's analysis of the least sophisticated debtor standard, generally. *Swanson v. Southern Or. Credit Serv.*, 869 F.2d 1222, 1226-1228 (9th Cir. Or. 1988).

Here, Singer threatened to levy the Social Security benefits of Gates by initiating the levy action with the Sheriff, and then actually followed through on that threat by freezing Gate's Social Security benefits, going so far as to threaten to levy future Social Security benefits as well for the next six months. It is hard to imagine how anyone, especially a "least sophisticated debtor" could view all of this as anything but a threat to take her Social Security funds. This threat even had Singer not acted on it, is in violation of the FDCPA.

### G.    The funds levied here were Social Security benefits.

Singer now argues that in its final order the district court never specifically stated that the funds levied were Social Security benefits, and therefore there is some doubt as to whether the funds really were actually exempt.   If Singer is correct, the case must be remanded back to the district court to make such a determination as this would be a material disputed fact.  However, it is not correct.

### 1.    Singer conceded that the funds levied were Social Security benefits.

This issue is not actually disputed and no such remand is necessary.  Singer previously conceded that Social Security benefits were levied, something the district court relied upon in its order. [*Record, 505*].

The district court's ruling relied upon Singer's previous concession that the funds were Social Security benefits. [*Record, 505*].  This concession took place just after July 24, 2013, when the San Diego County Sheriff levied "all sums on deposit," just as Singer had instructed.  [*Record, 522*].  A week later, on August 1, 2013, immediately after Gates received Singer's levy notification, Gates filed a California Claim of Exemption, seeking exemption of the full amount of the levied funds as exempt Social Security benefits pursuant to 42 U.S.C. § 407.  [*Record, 504:22 - 505:1*]. Consequently, pursuant to California law if Singer now controverted Gates' assertion in her Claim of Exemption, and wished to argue that the levied funds were not Social Security benefits as Gates claimed, California law required that Singer "shall file with the court" an opposition to this Claim of

Exemption. *See* Cal. Code Civil Proc. § 704.080(e)(1). Thereafter, a hearing would take place to resolve the dispute. Cal. Code Civil Proc. § 704.080(e)(1). At this hearing, Gates would have the burden of proving that the funds were Social Security benefits. *See* Cal. Code Civil Proc. § 704.080(e)(4).

However, as the district court stated, Singer chose not to oppose Gates' motion [See the district court's Order, [*Record 505:2*], stating, "Defendants did not oppose the Claim of Exemption."] Such an opposition by Singer would have "deemed controverted" the allegation raised by Gates pursuant to Cal. Code Civil Proc. § 704.080(e)(3). Consequently, by failing to oppose Gates' motion, Singer was conceding that the funds were Social Security benefits, just as Gates claimed, and Singer was waiving any argument to the contrary. The claim that those funds were Social Security benefits was thereafter deemed by the court to be uncontroverted, and consequently the funds were returned to Gates. [*Record, 505:2*], and Cal. Code Civil Proc. § 704.080(e)(3).

**2. Even without this concession, Gates established, through tracing, that the funds were exempted Social Security benefits.**

Furthermore, because Gates acknowledged that she occasionally gets a few dollars from her son to help with home expenses [*Record* 117: 21-28] which theoretically might have found its way into Gates' savings account, in Gates' opposition to Singer's motion for summary judgment [*Record, 440 - 471*] Gates provided the district court with detailed analysis as to the funds at issue and traced

those funds in order to demonstrate that the funds in her savings account were Social Security benefits.  [*Record 456 - 460*; and *Record 469 - 471*.]

As Gates noted in her opposition, in these types of cases the holdings of courts as to commingled funds varies.  Some courts hold that if an account contains *any* Social Security benefits *all* the funds in that account are thereafter exempt [*Record 454, § B-2*], citing *Bray v. Cadle Co.*, 2010 U.S. Dist. LEXIS 109470 (S.D. Tex.Oct. 12, 2010), *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 415-16, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973), and *Porter v. Aetna Casualty & Surety Co.*, 370 U.S. 159 (U.S. 1962), while other courts have held that the funds need to be traced in order to determine if commingled Social Security benefits were levied [*Record 454, § B-3*], citing *NCNB Financial Services, Inc., v. Shumate*, 829 F. Supp. 178, 180 (W.D. Va. 1993) *aff'd* 45 F.3d 427 (4th Cir. 1994), *Dean v. Fred's Towing*, 245 Mont. 366, 801 P.2d 579, 582 (Mont. 1990), and *S & S Diversified Servs., L.L.C. v. Taylor*, 897 F. Supp. 549, 552 (D. Wyo. 1995).

As Gates demonstrated in her opposition [*Record 456 - 460*; and *Record 469 - 471*], here it made no difference as to which analysis was used when tracing the funds because all methods result in Social Security benefits being levied.  [*See Record 453, § B*, entitled "Under any analysis, the money levied by the defendants was Social Security benefits, and consequently protected under federal law"].

Finally, at times Singer admits in its Answering Brief that the funds levied were Social Security benefits.  (*See* Answering Brief at p. 21, § VII, with Singer

arguing that it levied Gates' Social Security benefits "with no information that the funds were exempt" so the levy of Social Security benefits should not be viewed as being unfair or unconscionable.)

> **H.    Singer's argument concerning state law are inapposite.**

Throughout its Answering Brief, Singer argues that California state law provides certain procedures to banks with regard to the levying of Social Security benefits, and, Singer claims, the bank here followed these procedures so Singer cannot be held liable under the FDCPA and California's Rosenthal Act.  However, this is a *non sequitur*.   Regulations regarding how banks should protect Social Security benefits are not applicable to the facts here, but even if they were the FDCPA envisions the conflict of law that Singer's theory would create and resolves such a conflict by making the state law irrelevant under those circumstances.

To begin with, 15 U.S.C. § 1692n of the FDCPA, entitled "Relation to State laws," provides as follows:

> This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

This means that unless a state law provides *greater* protection to the consumer than does the FDCPA, such state law is inapplicable.

15 U.S.C. § 1692e(5) provides that a debt collector may not threaten to take action that cannot legally be taken. California's Rosenthal Act, through Cal. Civ. Code § 1788.17, incorporates 15 U.S.C. § 1692e(5), provides the same. However, still Singer argues that "[n]or is the California law preempted by federal law" even though Singer then argues that this California law allows Singer to levy Social Security benefits under some conditions. *See* Answering Brief at p. 9, ¶ 2.

The Supreme Court and the Ninth Circuit have held that it is unlawful to levy Social Security benefits under *any* circumstances. *Bennett v. Arkansas*, 485 U.S. 395, 397 (U.S. 1988) ("Section 407(a) unambiguously rules out any attempt to attach Social Security benefits."). None of the benefits paid or payable under the Social Security Act are subject to execution, levy, attachment, garnishment, or other legal process. *Id*.

The Social Security Act provides that:

> The right of any person to any future payment under this title … shall not be transferable or assignable, at law or in equity, and *none of the moneys paid or payable or rights existing under this title … shall be subject to execution, levy, attachment, garnishment, or other legal process*, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a) (Italics added.) *See also, United States v. Novak*, 476 F.3d 1041, 1047 (9th Cir. Cal. 2007) (same).

Further, the Social Security Act provides that this prohibition to execution, levy, attachment, garnishment, or other legal process may not be limited in any manner, including through state law.

> No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

42 U.S.C. § 407(b). *See also*, *Crawford v. Gould*, 56 F.3d 1162, 1163 (9th Cir. Cal. 1995), citing *Fetterusso v. State of New York*, 898 F.2d 322 (2d Cir. 1990). (California state law is preempted by 42 U.S.C. § 407.) "Courts have uniformly recognized that the purpose of section 407(a) is to protect social security beneficiaries and their dependents from the claims of creditors." *Fetterusso,* 898 F. 2d at 327.

In *Bennett v. Arkansas*, 485 U.S. 395 (U.S. 1988), the State of Arkansas relied on an Arkansas state statute that authorized the state to seize a prisoner's property or estate, including federal Social Security benefits, in order to help defray the cost of maintaining the state's prison system. The Supreme Court of the United States reversed the Arkansas Supreme Court, holding that the Arkansas law violated the supremacy clause of the Federal Constitution (Art VI, cl 2), as it allowed a portion of the Social Security benefits to be seized, in contradiction to federal law that provides that "none of the moneys paid or payable … under [the

Social Security Act] shall be subject to execution, levy, attachment, garnishment, or other legal process." *Bennett v. Arkansas*, 485 U.S. 395 (U.S. 1988).

The Ninth Circuit rejected a similar California argument, holding that § 407

> was not designed to preclude use of only the judicial process to obtain Social Security benefits. Rather, §407(a) is designed "to protect social security beneficiaries and their dependents from the claims of creditors." *Fetterusso v. New York*, 898 F.2d 322, 327 (2nd Cir.1990). The cramped reading of § 407 California urges would enable the state to obtain Social Security benefits through procedures that afford less protection than judicial process affords.

*Crawford v. Gould*, 56 F.3rd at 1166. The Ninth Circuit therefore affirmed a district court's injunction as it applied to the patients' Social Security benefits. *See also Brinkman v. Rahm*, 878 F.2d 263 (9th Cir.1989) (Holding that State of Washington procedure, which was very similar to California procedure, and designed to obtain the Social Security benefits of the mentally ill, violated § 407).

## I. There were alternatives available to Singer that would have avoided this violation, but Singer chose not to implement those alternatives.

Singer argues that "[t]here are sufficient legal precautions in place under the California and Federal authorities cited herein to protect exempt assets. Judgment creditors should not be forced to take a judgment debtor's word for it that the entire account was exempt." [*Record, 030:14-16*]. However, Gates does not suggest debt collectors should be forced to "take a judgment debtor's word for it" and agrees that there are sufficient legal precautions in place to protect exempt assets. In fact,

the FDCPA makes it clear that a debt collector controls whatever procedures it might choose to implement to avoid violations of the law. 15 U.S.C. § 1692k(c). However, the precautions provided these debt collectors must be actually implemented, not ignored, as was done here, or the debt collector must take responsibility for the violations that result from its ignorance.

The methodology debt collectors choose to implement to ensure their compliance with the FDCPA and California's Rosenthal Act are up to the debt collector. The simplest method to ensure compliance here would be to more narrowly tailor the Sheriff's instructions and simply levy "only non-exempt funds." However, Singer failed to adapt such a common sense approach.

The choices these debt collectors make, or fail to make, to protect Social Security recipients are then reflected by the results. The FDCPA provides that any procedures must be maintained to reasonably avoid potential errors. This is because should these debt collectors subsequently take action that inadvertently violates the law, as here, those procedures are the only defense available to debt collectors under the FDCPA and California's Rosenthal Act.

Here, however, neither MCT nor Singer had any procedures in place at all, much less procedures adapted to avoid what took place here, and they chose to not ask any questions before levying these Social Security benefits. That was their choice, but in making those choices Singer risked that the funds it levied were Social Security benefits and that it might be violating the law.

When, as here, a debt collector chooses to remain ignorant as to the source of a consumer's funds, it should not then be heard to use that ignorance as a defense. The FDCPA is a strict liability statute, and there is only one defense available to a debt collector who violates it - bona fide error pursuant to 15 U.S.C. § 1692k(c). Only when a debt collector maintains procedures reasonably adapted to avoid the error that took place is that mistake entitled to be treated as one made in good faith. *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1007 (9th Cir. Ariz. 2008). Here it is undisputed that Singer waived the bona fide error defense, and in the process avoided any discovery or inquiry as to that issue, asserting instead that there was no error so there is no such defense needed. [*Record 223-224, item #15*] (Singer declaring that it was not asserting the bona fide error defense).

Further still, it is not difficult to envision procedures that might have avoided the error that took place here, to wit:

- Singer could have limited the levying instructions in its order to the Sheriff to non-exempt funds. Instead, Singer demanded all funds, from all accounts, with no exceptions or regard to their source. [*Record 522.*]

- Singer could have conducted a debtor's exam, pursuant to Cal. Code Civil Proc. § 708.110, and learned the source of Gate's income. Singer chose not to do that, arguing that at $60.00 such an exam would be too expensive. (*See* Answering Brief at p. 15-16.)

- Singer could have spoken with the San Diego County Credit Union, the creditor here, who freely admits it knew the source of these funds and would have provided that information to Singer had Singer simply asked. However, neither Singer nor MCT asked. [Record, 277:15-278:3.]

- Singer could have asked the Wells Fargo Bank (Gates' bank) for the source of the funds before levying those funds, as Wells Fargo Bank was well aware of where those funds originated. [Record, 491:14-18.] *See also*, Cal Code Civ Proc § 708.120 (A judgment creditor with a judgment exceeding $250.00 may examine third party records.) Again, Singer never asked for that information.

- Singer could have asked its client, MCT, for the source of the funds, who had repeatedly been told their origin, but Singer chose not to do so. [Record, 244:8 - 246:20.]

- Singer could have asked Gates for the source of the funds, and Gates would have supplied that information just as she had repeatedly done when MCT had requested the source of the funds. *See* [Record, 318:4-17,] and [Record, 324:15-325:21 and 329:2-18] and [Record, 429]. Again, Singer never asked.

Singer chose none of those things - a choice that the Ninth Circuit has warned leads to liability by the debt collector:

> Most important, because the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors – repeat players likely to be acquainted with the legal standards governing their industry – to bear the brunt of the risk.  As we have oft repeated, it does not seem "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.

*Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1171-1172 (9th Cir. Or. 2006), quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393, 85 S. Ct. 1035, 13 L. Ed. 2d 904 (1965); see also *Swanson v. Southern Or. Credit Serv.*, 869 F.2d 1222, 1228 (9th Cir. Or. 1988) (same).

## III.    Conclusion

Because both the FDCPA and California's Rosenthal Act are strict liability statutes, with the sole exception being the bona fide error defense, which Singer expressly waived and does not argue here, the issues are straight-forward.   It is unlawful to levy Social Security benefits.   As Singer now admits, "Simply put, Singer started the levy process."  Answering Brief at p. 17, § B.  Singer, however, not only threatened to levy the Social Security benefits of Gates, it did so with the threat to continue doing so in the future.  This violated 15 U.S.C. § 1692e(5) and Cal. Civ. Code § 1788.17 as the Rosenthal Act incorporates 15 U.S.C. § 1692e(5). Consequently, Singer is liable under the FDCPA and Rosenthal Act, and for these reasons, Gates requests the district court's March 13, 2015 Order and May 4, 2015

judgment, [*Record, 503-518, 519*], be reversed, and judgment be entered for Gates with costs of this appeal and reasonable attorneys fees awarded for the action.

Dated: February 3, 2016                    Respectfully submitted,

By: /s/ Robert L. Hyde

**HYDE & SWIGART**
2221 Camino Del Rio South,
Suite 101
San Diego, CA 92108-3609
Telephone:   (619) 233-7770
Facsimile:    (619) 297-1022

**IV.    Certificate of Compliance Pursuant To Fed. R. App. 32(a)(7)(C) and Circuit Rule 32-1.**

I certify pursuant to Fed. R. App. P. 32(a)(7)(B) and Ninth Circuit Rule 32-1 that the attached Brief of Appellant complies with the type-volume limitation of Fed. R. App. P. 32(a)(5)and (6) as it is proportionately spaced, has a typeface of 14 points, and contains 5,519 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: February 3, 2016

By: /s/ Robert L. Hyde
Robert L. Hyde, Esq.
**HYDE & SWIGART**
2221 Camino Del Rio South,
Suite 101
San Diego, CA  92108-3609
Telephone:     (619) 233-7770
Facsimile:      (619) 297-1022

**V.      Certificate Of Service**

I, Robert L. Hyde, certify that on February 3, 2016 a copy of Appellant's

Reply Brief, was sent to the following, via overnight mail, postage prepaid:

*Counsel for Defendant/Appellee*

Aimee Robson Morris
**MORRIS LAW, PC**
7588 Hilmont Drive
Oakland, CA 94605
(619) 991-0548
Fax: (858) 207-6954
Email: armmorris@aol.com

Dated: February 3, 2016

By: /s/ Robert L. Hyde
Robert L. Hyde, Esq.
**HYDE & SWIGART**
2221 Camino Del Rio South,
Suite 101
San Diego, CA  92108-3609
Telephone:      (619) 233-7770
Facsimile:      (619) 297-1022

9th Circuit Case Number(s) | 15-55728

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Feb 3, 2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | s/Eva Dickey

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)